UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER MUSIC GROUP CORP.<br><br>        Plaintiff,<br><br>v.<br><br>SCORPIO MUSIC, INC., and STEVEN S. PARELMAN,<br><br>        Defendants. | Case No. 13-cv-8472-JGK<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Warner Music Group Corp. for their Complaint against Defendants Scorpio Music, Inc. and Steven S. Parelman (collectively, "Defendants"), alleges on personal knowledge as to matters relating to itself, and on information and belief as to all other matters, as follows:

### NATURE OF THIS ACTION

1.   This is a suit for copyright infringement under the Copyright Act, Title 17 of the U.S. Code, as well as copyright infringement and unfair competition under New York state law, for damages and injunctive relief to redress the willful violation of Plaintiff's copyrights in sound recordings. Defendants purchased counterfeit albums of the performances of some of the most historic artists of our time from a well-known music counterfeiter. Defendants have then sold, offered for sale and/or actively distributed the unauthorized and illegitimate albums, which are owned or exclusively licensed by Plaintiff.

**THE PARTIES**

2. Plaintiff Warner Music Group Corp. ("Warner" or "Plaintiff") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. Warner owns the well-known, indeed iconic, record labels, Warner Bros. Records, Elektra Records, Rhino Entertainment, and Atlantic Records Group, among others.

3. Defendant Scorpio Music, Inc. ("Scorpio") is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business in Trenton, New Jersey. Scorpio is engaged in the business of distributing infringing phonorecords within this District and throughout the United States.

4. Defendant Steven S. Parelman is Scorpio's general manager, and personally makes decisions regarding, participates in, directs, exercises control over, and benefits from Scorpio's infringing activities. Indeed, Mr. Parelman has actively directed, and continues to actively direct, Scorpio's illegal conduct. Mr. Parelman uses and goes by the email address scorpiomus@aol.com.

**JURISDICTION AND VENUE**

5. This is a civil action seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and related state law claims for unfair competition and copyright infringement. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related as to be part of the same case or controversy as the claims over which the Court has original jurisdiction.

6.  This Court has personal jurisdiction over Defendants because they do systematic and continuous business in New York, and have performed acts directly aimed at and causing harm in New York which give rise to this Complaint, including by distributing the infringing copies of sound recordings in New York. In addition, Defendants' infringing conduct has caused and continues to cause Plaintiff injury in New York, Defendants reasonably expect or should expect their infringing conduct to have consequences in New York, and Defendants derive substantial revenue from interstate commerce.

7.  Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 28 U.S.C. § 1400.

### PLAINTIFF'S COPYRIGHTED SOUND RECORDINGS

8.  Warner is engaged in the business of producing, manufacturing, distributing, selling, and/or licensing the distribution and sale of their sound recordings on phonorecords (as defined in 17 U.S.C. § 101, and including, without limitation, vinyl records and other formats).

9.  Warner is among the leading manufacturers of phonorecords in the United States. Warner's name and reputation is widely and favorably known in the State of New York, throughout the United States, and worldwide.

10. Warner through its label, Warner Bros. Records, owns the copyrights and/or the exclusive rights, among others, to reproduce, and distribute innumerable popular sound recordings, including for illustrative purposes those recordings listed on Exhibit A (the "Copyrighted Recordings"). Warner has received Certificates of Copyright Registration from the Register of Copyrights for its Copyrighted Recordings. Warner further owns rights to sound recordings that were initially "fixed" prior to February 15, 1972 (the "Pre-1972 Works") and that

are therefore subject to protection under state law, including for illustrative purposes those recordings listed on Exhibit B ("Master Recordings," and collectively with the Copyrighted Recordings, the "Recordings").

## DEFENDANTS' INFRINGING CONDUCT

11. Defendants have offered for sale and distributed unauthorized, and therefore, illegal copies of Warner's Recordings, which are albums recorded by the legendary rock band, Black Sabbath. Moreover, Defendants continue to offer for sale and distribute the Recordings, as well as many other of Warner's copyrighted sound recordings.

12. In July 2013, Warner discovered that what appeared to be illegal copies of its Recordings were being sold by various vendors to the public through online marketplaces, such as eBay. Warner representatives purchased the Recordings from these online vendors. When the Warner representatives received the purchased Recordings, they confirmed that the purchased Recordings were indeed illegal, counterfeit copies of Warner's Recordings.

13. After confirming that the purchased copies of the Recordings were counterfeit, Warner representative contacted a number of the online vendors from whom Warner purchased the Recordings. Warner put the vendors on notice that they were selling illegal copies of the Recordings and demanded that they cease and desist the infringing conduct. To varying degrees, the vendors were responsive and cooperative. The vendors identified Defendant Scorpio as the source of their illegal copies of the Recordings. At least one of the vendors identified scorpiomus@aol.com as their contact to purchase albums from Scorpio.

14. In addition, at least one of the vendors provided Warner representatives with an electronic copy of Scorpio's wholesale distribution list that Scorpio provides to its client-

4

vendors.  This wholesale distribution list is Scorpio's catalog of music that it offers for sale.  More than 200 of Scorpio's offerings on its wholesale distribution list dated July 17, 2013 are albums that Warner owns the rights to, and appear to be unauthorized.  These include albums by artists such as Frankie Valli, Don Henley, Madonna, Hank Williams, Jr., Stevie Nicks, Erasure, The Cure, and Chicago.

15. Scorpio is well aware of the copyright laws when it comes to the distribution of music.  Scorpio has been sued for infringement in the past, and has been held liable for its illegal activities.  In the federal criminal case against Lamonte, for which Lamonte served a prison sentence, the FBI traced certain of the counterfeit records at issue to Scorpio Music Distributors, Inc. (an entity related to Scorpio).  The FBI searched the Scorpio Music Distributors premises and uncovered counterfeit records as well as business records showing purchases of tens of thousands of albums from a Lamonte-controlled entity.  Thus, Scorpio was and is well aware of the risks of sourcing the albums it distributes from Lamonte.

16. On August 29, 2013, counsel for Warner wrote to Defendants at their address in Trenton, New Jersey to demand that they cease and desist distributing illegal copies of Warner's Recordings, and any other counterfeit albums in violation of Warner's copyrights.  Mr. Parelman responded by email from the address scorpiomus@aol.com.  Mr. Parelman identified John Lamonte and his company, Creative Sounds, Inc., as the source of the illegal copies of the Recordings.  In his response, Mr. Parelman fended off Warner's infringement claims as "an issue between Rhino WMG [i.e., Warner] and Creative Sounds, not Scorpio."

17. Through counsel, Warner asked Defendants, among other information, when they purchased the counterfeit Recordings from Creative Sounds and for a complete accounting of all

albums purchased from or through Creative Sounds and/or its owner, John Lamonte.  Defendants refused to respond to Warner's requests.

18.     John Lamonte is a convicted counterfeiter who has been sued repeatedly for copyright infringment.  Lamonte, doing business through Creative Sounds, is well known in the record industry, including among wholesale distributors and retailers.  In 1978, Lamonte was convicted of counterfeiting records and tapes, and subsequently served 18 months in federal prison.  In 1995, Creative Sounds and Lamonte were sued in federal court in the Central District of California by nearly every major record company, including Warner, for copyright infringement, among other claims, from which a permanent injunction issued against Lamonte and Creative Sounds.[1]  In 2008, Lamonte and Creative Sounds were subject to contempt proceedings for violating the permanent injunction.  The federal court found Lamonte and Creative Sounds in contempt and issued an amended injunction that includes, among many other things, that Creative Sounds and Lamonte: are prohibited from representing to anyone that they own any sound recordings owned by the plaintiffs (including Warner); cannot license, sell, or assign any sound recordings owned by the plaintiffs (including Warner); and had to turn over for destruction all infringing materials in their possession.

19.     The injunction against Creative Sounds and Lamonte is common knowledge in the record industry, including among wholesale distributors and retailers.  Thus, while Scorpio attempts to downplay its own infringing conduct, in fact Scorpio routinely purchased counterfeit albums, including the Recordings, from a notorious infringer and offered these counterfeit albums for sale through its distribution channels.

---

[1] *See A&M Records, Inc., et al. v. John Lamonte and Creative Sounds, Ltd.*, Case No. CV 95-0212 FMC (C.D. Cal.).

20.     Through counsel, Warner contacted Lamonte to demand that he and Creative Solutions cease and desist their latest infringing conduct.  Warner also sought from Lamonte information regarding his and/or Creative Solutions' sale of counterfeit recordings to Scorpio.  Warner asked Lamonte for the basis for his claim of rights to the albums sold to Scorpio.  Lamonte provided a document that purportedly evidenced Lamonte's rights in the Recordings.  However, the document did not evidence any such rights at all.  Despite repeated follow-up requests, Lamonte, not surprisingly, could not substantiate that he had any rights to the Recordings.  Lamonte refused to provide any additional information to Warner.

21.     Warner has attempted to resolve the issues with Defendants described herein without litigation.  However, Defendants have been unwilling to resolve this matter with Warner.

22.     Defendants have provided Warner with only self-serving assurances that they have stopped infringing Warner's rights.   To the extent that Defendants know that the works they have been selling are infringing, they may in fact be able to identify which albums they must stop selling.  To the extent that Defendants claim that they are not aware that the albums they are selling are infringing, they cannot provide any reliable assurances that they have stopped infringing.   However, Defendants have refused to discuss the matter further with Warner.

23.     Moreover, by refusing to discuss the matter with Warner, Defendants are forestalling Warner taking any further action to halt the distribution of infringing albums by third-parties to whom Defendants have been selling infringing albums.

## **FIRST CAUSE OF ACTION**

**(Copyright Infringement under 17 U.S.C. §§ 101 *et seq.*)**

24.     Plaintiff repeats and realleges each and every one of the foregoing allegations as if set forth at length herein.

25.     Defendants have engaged in the business of unauthorized distribution of copies of Plaintiff's copyrighted sound recordings, including but not limited to the Copyrighted Recordings.  In furtherance of this unauthorized distribution, Defendants have advertised, marketed, distributed, sold, and/or offered for sale unauthorized recordings.

26.     Defendants' acts complained of herein constitute infringement of Plaintiff's registered copyrights and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

27.     The infringement of each of Plaintiff's rights in and to the Copyrighted Recordings constitutes a separate and distinct act of infringement.

28.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and with indifference to the rights of Plaintiff.

29.     Plaintiff is therefore entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

30.     Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

31.     Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated by or measured in money damages.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §

502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiff's copyrights and exclusive rights under copyright.

## SECOND CAUSE OF ACTION

### (Vicarious Copyright Infringement)

32. Plaintiff repeats and realleges each and every one of the foregoing allegations as if set forth at length herein.

33. Defendants had the right and ability to supervise or control the infringing activities.

34. Defendants received a financial benefit from the infringements.

35. Defendants' acts complained of herein constitute infringement of Plaintiff's registered copyrights and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

36. The infringement of each of Plaintiff's rights in and to its copyrighted sound recordings, including but not limited to the Copyrighted Recordings, constitutes a separate and distinct act of infringement.

37. Defendants' acts of infringement have been willful, intentional, purposeful, in disregard of and indifference to Plaintiff's rights.

38. Plaintiff is therefore entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

39. Plaintiff further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

40. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated by or measured in money damages. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiff's copyrights and exclusive rights under copyright.

## THIRD CAUSE OF ACTION

### (Contributory Copyright Infringement)

41. Plaintiff repeats and realleges each and every one of the foregoing allegations as if set forth at length herein.

42. Defendants authorized the infringements, or had knowledge of such infringing activity and induced, caused, or materially contributed to such activity.

43. Defendants' acts complained of herein constitute infringement of Plaintiff's registered copyrights and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

44. The infringement of each of Plaintiff's rights in and to its copyrighted sound recordings, including but not limited to the Copyrighted Recordings, constitutes a separate and distinct act of infringement.

45. Defendants' acts of infringement have been willful, intentional, purposeful, in disregard of and indifference to Plaintiff's rights.

46. Plaintiff is therefore entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

47.     Plaintiff further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

48.     Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated by or measured in money damages. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiff's copyrights and exclusive rights under copyright.

## FOURTH CAUSE OF ACTION

### (Common-Law Copyright Infringement of Pre-1972 Works)

49.     Plaintiff repeats and realleges each and every one of the foregoing allegations as if set forth at length herein.

50.     Plaintiff's Pre-1972 Works are subject to common-law copyright protection under the law of the State of New York. As the owner of valid common-law copyrights in the Pre-1972 Works, Plaintiff possesses the exclusive rights to manufacture, copy, sell, distribute, and otherwise exploit the Pre-1972 Works.

51.     Plaintiff has not granted or licensed to Defendants any rights with respect to the Master Recordings. Defendants' unauthorized distribution, sale, and/or offer for sale of the Pre-1972 Works, including but not limited to the Master Recordings, constitute infringement of Plaintiff's common-law copyrights.

52.     As a direct and proximate result of Defendants' willful and reckless copyright infringement, Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

Case 1:13-cv-08472-JGK   Document 10   Filed 01/13/14   Page 12 of 15

53. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated by or measured in money damages. Plaintiff has no adequate remedy at law. Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiff's copyrights and exclusive rights under copyright.

## FIFTH CAUSE OF ACTION

### (Unfair Competition as to Pre-1972 Works)

54. Plaintiff repeats and realleges each and every one of the foregoing allegations as if set forth at length herein.

55. Plaintiff possesses exclusive ownership interests in and to the Pre-1972 Works and is engaged in the business of selling, distributing, and otherwise commercially exploiting the Pre-1972 Works, and licensing others to do the same. Plaintiff has made a substantial investment of money, creative talents, and other resources in order to develop, market, promote, and commercially exploit its sound recordings.

56. Through the conduct described above, Defendants are violating Plaintiff's rights in the Pre-1972 Works, including but not limited to the Master Recordings, and are guilty of unfair competition under the common law of the State of New York. By distributing, selling, and/or offering for sale unauthorized copies of the Pre-1972 Works, Defendants compete directly with Plaintiff and its lawful licensees, and further take advantage of and undermine Plaintiff's substantial creative and financial investment in the Pre-192 Works. Defendants are willfully, recklessly, and unfairly appropriating Plaintiff's rights in the Pre-192 Works for their own commercial benefit.

12

57. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

58. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated by or measured in money damages. Plaintiff has no adequate remedy at law. Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiff's copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For a declaration that Defendants have directly and/or secondarily infringed Plaintiff's copyrights under the Copyright Act and the common law of the State of New York;

2. For a declaration that such infringement is willful;

3. For a declaration that Defendants have engaged in unfair competition and other violations of New York state law;

4. For a permanent injunction requiring Defendants, their respective agents, servants, employees, officers, successors, licensees, and assigns and all persons acting in concert or participation with each or any of them, or for them, to:

    a. Cease and desist from infringing any of Plaintiff's copyrights (whether now in existence or hereafter created) in any manner, including without limitation, the selling, offering to sell, and/or distribution of unauthorized copies of the

       Copyrighted Recordings and the Master Recordings, and any other of Plaintiff's copyrighted works;

   b. Deliver all unauthorized phonorecords in Defendants' possession to Plaintiff's attorneys.

5.     For the first through third causes of action, an award of damages, including without limitation, maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for other such amounts as may be proper pursuant to 17 U.S.C. § 504;

6.     For the fourth and fifth causes of action, an award of compensatory damages in such amounts as will be proven at trial, as well as punitive damages;

7.     For an award of Plaintiffs' attorneys' fees, full costs, and disbursements in this action;

8.     For an order directing that Defendants report to this Court within thirty (30) days after a permanent injunction is entered to show their compliance with paragraphs 4(a) and (b);

9.     For prejudgment interest according to law; and

10.    For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2014

By: _____
Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel: 202-621-9027
Fax: 866-766-1678
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*
*WARNER MUSIC GROUP CORP.*